```
              IN THE UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF KANSAS


CLIFFORD P. WHITE, III,

              Plaintiff,
                                          CIVIL ACTION
     vs.                                  No. 10-3022-SAC

SHELTON RICHARDSON, et al.,


              Defendants.
```

MEMORANDUM AND ORDER

This matter is a civil action filed by a Maryland state prisoner for claims arising from his incarceration in the Leavenworth Detention Center, Leavenworth, Kansas (LDC), operated by the Corrections Corporation of America (CCA).

By an earlier order, the court dismissed defendant J. Michael Stouffer, Commissioner of the Maryland Department of Public Safety and Correctional Services (MDPSCS), from this action.

The following motions are pending before the court:

> # 28: motion of Scott P. Stermer to dismiss for lack of jurisdiction, to dismiss for failure to state a claim, or, in the alternative, motion for summary judgment;
> #30: motion of Charles Martin and Shelton Richardson to dismiss for failure to state a claim;
> #33: motion of plaintiff to dismiss defendants Stermer

```
         and Martin;
         #34: motion of plaintiff for extension of time and
         motion to appoint counsel;
         #35: plaintiff's response to motion to dismiss of
         defendant Stouffer, or, in the alternative, motion for
         summary judgment;
         #37: plaintiff's response to motion to dismiss of
         defendants Richardson and Martin, or, in the alterna-
         tive, motion for summary judgment;
         #38: motion of plaintiff to appoint counsel; and
         #41: motion of plaintiff to appoint counsel and to
         expedite.
```

**Factual background**

CCA is a private Maryland corporation. Its facilities house federal prisoners pursuant to its contract with the United States Marshals Service (USMS).

Effective July 1, 2007, the MDPSCS entered Intergovernmental Agreement ODT-1-8-0007 with the USMS. The MDPSCS and the Department of Justice modified the contract on July 23, 2008, to allow the MDPSCS to transfer up to 48 inmates to federal custody.

The agreement allowed federal authorities to move the Maryland inmates to a CCA facility or another federal facility "when appropriate" with notice to the MDPSCS. Likewise, under the agreement, CCA could refuse to accept any Maryland inmate it considered unsuitable for housing at the LDC.

Plaintiff and other Maryland inmates was transferred to the LDC pursuant to the modified contract in order to make space

available for federal pretrial detainees in Maryland.

In September 2008, plaintiff was placed in disciplinary segregation at the LDC for 30 days due to his involvement in an assault.

In October 2008, all of the Maryland inmates at the LDC were placed in administrative segregation after several of them were involved in assaults on staff that resulted in stab wounds on two correctional officers.

The LDC acted on the recommendation of an independent investigation group in placing all Maryland inmates in discretionary segregation, and it advised the inmates affected that the segregation was for security reasons by a notice dated October 27, 2008, issued from the Unit Manager. The notice reads, in pertinent part:

> I am writing to inform you, based on the results of an investigation conducted by an outside agency, involving the assault on (2) correctional officers, it was recommended, all Maryland [sic] are to be placed in segregation for the safety and security of the institution....
>
> Leavenworth Detention Center Officials are well aware that ALL Maryland inmates were not involved, however, due to the information obtained during the investigation, again, it was recommended all Maryland inmates be placed in segregation.
>
> Please continue the good behavior you displayed while in population. Please do not function as a group, function as an individual.

> [...]
>
> There will be additional precautions taken for security reasons. Therefore, some procedures will be implemented for the safety and security of the institution/staff. Please comply with new procedures. Again, do not function as a group, function as an individual.
>
> [...]
>
> The segregation review board will speak with each of you individually, upon completion of this investigation from outside officials. As of today, we still have investigators on site.
>
> [....] (Doc. 1, Ex. A., Memorandum from Unit Manager R. Allen.)

As a result, plaintiff remained in administrative segregation until May 2010, when he was returned to the custody of Maryland authorities.

In this action, plaintiff complains of allegedly discriminatory placement in administrative segregation, extended segregation without meaningful periodic review of that status, and the inability to participate in Maryland parole proceedings in person.

**Motion of defendant Stermer**

Defendant Stermer is employed as the Assistant Trustee for Procurement, Office of the United States Federal Trustee. Acting in the exercise of his employment, he signed the contract

as representative for the Department of Justice.  Defendant Stermer moves for dismissal, or, in the alternative, for summary judgment.  (Doc. 28).

Defendant Stermer argues the plaintiff has identified no personal involvement by him in the alleged violation of his protected rights, that the plaintiff's claims of due process and equal protection violations fail on their merits, and that the court lacks jurisdiction over him.

Because plaintiff has filed a motion to dismiss defendant Stermer (Doc. 33), the court grants the request of defendant Stermer for dismissal and need not address his motion in detail. The court notes, however, that defendant Stermer resides in the Washington, D.C. area, and that his only apparent involvement is the signing of the contract on behalf of the Office of the Federal Trustee.

The exercise of personal jurisdiction over a nonresident party comports with due process only where "there exist[] 'minimum contacts' between the defendant and the forum State." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980)(quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

The minimum contacts standard may be met in two ways. First, where a defendant has "purposefully directed his activi-

5

ties at residents of the forum," and "the litigation results from alleged injuries that arise out of or relate to those activities" the court may exercise specific jurisdiction over that defendant.  *Benton v. Cameco Corp*., 375 F.3d 1070, 1075 (10th cir. 2004)(internal citations and quotation marks omitted). Second, where a defendant has had continuing and systematic business contacts in the forum state, the court may exercise general personal jurisdiction over that defendant.  *Id.*, (internal citations and quotation marks omitted).

Here, there is no allegation before the court that reasonably suggests that defendant Stermer had minimum contacts with the state of Kansas, such that this court might exercise personal jurisdiction over him.

**Motion of defendants Martin and Richardson**

Defendants Martin and Richardson are employees of CCA. Defendant Richardson is the Warden of the LDC, and defendant Martin is the Director of Security there.

These defendants move for dismissal on the grounds that plaintiff fails to state a claim against them, that he fails to state a claim for relief under the Fourteenth Amendment, that he fails to state a claim for relief based on discrimination, that he fails to state a claim for violation of the Interstate Corrections Compact and the Intergovernmental Agreement, and

that he failed to exhaust administrative remedies.

Plaintiff has moved to dismiss defendant Martin from this action (Doc. 33), and the court grants that motion. The court's analysis of the motion will address the claims of defendant Richardson.

*Whether defendant Richardson acted under color of state law*

Defendant Richardson first argues he is not liable in this matter because he did not act under color of state law. To state a claim for relief under 42 U.S.C. § 1983, a plaintiff "must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Similarly, *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 399 (1971), provides an analogous remedy against federal officials for violations of constitutional rights.

Defendant Richardson is an employee of a private entity that operates a correctional facility. Private conduct may constitute state action where it is "fairly attributable to the State." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982). Thus, plaintiff may proceed against defendant Richardson only if his conduct is "fairly attributable" to the government.

Generally, a private party's conduct is viewed as fairly attributable to the government for purposes of determining liability where two conditions are established: "First, the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible. Second, the private party must have acted together with or ... obtained significant aid from state officials or engaged in conduct otherwise chargeable to the State." *Pino v. Higgs*, 74 F.3d 1461, 1465 (10th Cir. 1996)(quoting *Wyatt v. Cole*, 504 U.S. 158, 162 (1992)(internal quotations omitted)).

Because the court concludes on other grounds that the claims against the defendant must be dismissed, the court finds it is not necessary to reach the question whether the conduct of defendant Richardson is fairly attributable to the government.

*Whether plaintiff states a claim for relief under the Fourteenth Amendment*

Plaintiff claims his extended placement in administrative segregation violated his right to Due Process under the Fourteenth Amendment.

The first inquiry in a due process analysis is whether the plaintiff has shown a protected interest. The Due Process Clause "itself does not give rise to a liberty interest in

avoiding transfer to more adverse conditions of confinement." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005).

As an incarcerated prisoner, plaintiff retains only a limited range of protected liberty interests. *Abbott v. McCotter*, 13 F.3d 1439, 1442 (10th Cir. 1994). A prisoner's transfer "to less amenable and more restrictive quarters for nonpunitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence" and "administrative segregation is the sort of confinement ... inmates should reasonably anticipate receiving at some point in their incarceration"; thus, such segregation ordinarily does not implicate a protected liberty interest. *Hewitt v. Helms*, 459 U.S. 460, 468 (1983).

Next, "[t]he due process rights of prisoners are subject to reasonable limitation or restriction in light of the legitimate security concerns of the institution." *Penrod v. Zavaras*, 94 F.3d 1399, 1406 (10th Cir. 1996). However, where a restraint "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life", the government may create a protected liberty interest. *Sandin v. Conner*, 515 U.S. 472, 480 (1995). To determine whether such an atypical hardship has occurred, the court looks to the conditions of the segregation, including the length of the segregation and the

9

degree of restriction relative to the conditions imposed on other inmates.  *See Perkins v. Kan. Dep't of Corrections*, 165 F.3d 803, 809 (10th Cir. 1999).

More recently, in *Estate of DiMarco v. Wyoming Department of Corrections,* 473 F.3d 1334, 1342 (10th Cir.2007), the Tenth Circuit identified four factors to be considered in determining the existence of a liberty interest, namely, "whether (1) the segregation relates to and furthers a legitimate penological interest, such as safety or rehabilitation; (2) the conditions of placement are extreme; (3) the placement increases the duration of confinement ...; and (4) the placement is indeterminate."  The court instructed that this "assessment must be mindful of the primary management role of prison officials who should be free from second-guessing or micro-management from the federal courts."  *Id*.

The court has considered the record and concludes that, viewed under *Perkins* and the four factors set out in *DiMarco*, the decision to segregate the Maryland prisoners involved a legitimate penological purpose.  Plaintiff was placed in segregation due to his status as a member of the group of approximately 50 Maryland prisoners transferred to the LDC.  At least two members of this group had been involved in violent assaults on staff members, and the group as a whole was viewed

by Maryland authorities as the "most disruptive group"[1] of inmates in the Maryland correctional system. Indeed, plaintiff himself recently had been placed in disciplinary segregation for involvement in another assault at the facility.

Likewise, the court does not find that the plaintiff's conditions of confinement in administrative segregation created an atypical hardship. Plaintiff cites twenty-three hour confinement, limits on recreation during harsh weather conditions, limited access to legal materials, the use of restraints for transit within the facility, noncontact visitation, and a lack of good time credits.[2] While plaintiff did not have access to the variety and frequency of programming and recreational opportunities enjoyed in general population, it appears the segregated population was given some access to programming, that television sets were placed outside the cells and shared by two inmates, and that outdoor recreation was usually available.

---

[1] Doc. 1, Ex. G. letter of J. Michael Stouffer to the Honorable Elijah E. Cummings dated September 22, 2009. In response to correspondence from Congressman Cummings concerning another Maryland inmate, Commissioner Stouffer wrote, in part: "..we were able to transfer our most disruptive inmates to [the LDC] to further our mission of providing a safe environment for our staff and inmates."

[2] Doc. 35, p. 5.

The Tenth Circuit has rejected claims of due process violations in similar circumstances. In *Villarreal v. Harrison*, 201 F.3d 449, 1999 WL 1063830, at *2, & n. 1 (10th Cir. Nov. 23, 2000)(unpublished opinion), the Tenth Circuit upheld a summary judgment order finding that a two-year period of administrative segregation did not result in atypical conditions, despite restrictions on telephone privileges and the fact that segregated prisoners consumed their meals alone in their cells. Likewise, in *Klein v. Coblentz*, 132 F.3d 42, 1997 WL 767538, at *3 (10th Cir. Nov. 19, 1997)(unpublished opinion) and in *Jones v. Fields*, 104 F.3d 367, 1996 WL 731240, at **1-2 (10th Cir. Dec. 20, 1996)(unpublished opinion), the Tenth Circuit found no merit to challenges based upon a 584-day administrative segregation and a 15-month administrative segregation, respectively.

Next, while plaintiff complains he was unable to earn good time credits for double-celling following his transfer to the LDC, the loss of such credits will not "inevitably affect the duration of [a criminal] sentence." *Sandin*, 515 U.S. at 487.

The court therefore concludes the conditions of confinement endured by plaintiff, although more harsh than those outside the segregation unit, did not impose a significant hardship.

*Whether plaintiff has stated a claim of discrimination*

Plaintiff claims the defendant acted in a discriminatory

12

manner by keeping him and other Maryland prisoners in segregation because this was not the normal course of action.  The court liberally construes this claim to allege a violation of equal protection.

Equal protection "is essentially a direction that all persons similarly situated should be treated alike."  *Grace United Methodist Church v. City of Cheyenne*, 451 F.3d 643, 659 (10th Cir. 2006)(quoting *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)).

Plaintiff does not allege that he was treated differently based upon a suspect classification, and therefore, the government action will pass muster under equal protection principles if the action bears "a rational relation to some legitimate end."  *See Save Palisade Fruitlands v. Todd*, 279 F.3d 1204, 1213 (10th Cir. 2002).  This standard is deferential, and here, the segregation of the Maryland inmates bore a rational relationship to the goal of maintaining institutional security.  The court concludes the decision of authorities to house those inmates in a segregated area must be upheld.

*Whether defendant violated the ICC and the IGA*

Plaintiff generally alleges the defendant violated the Intergovernmental Agreement (IGA) and the Interstate Corrections

Compact (ICC)[3].

First, to the extent plaintiff's claim concerning the IGA may be construed as alleging discrimination due to his segregation as a Maryland inmate, his claim fails for the reasons already stated. The segregation of the Maryland inmates passes constitutional muster, and plaintiff has not advanced any persuasive argument arising from the IGA.

Next, as defendant notes, the Tenth Circuit has determined that claims of violations of the ICC do not constitute violations of federal law and are not actionable under 42 U.S.C. § 1983. *See Halpin v. Simmons*, 33 Fed. Appx. 961, 202 WL 700936 (10th Cir. 2002)(unpublished opinion). Plaintiff cannot prevail on this argument.

*Whether plaintiff failed to exhaust administrative remedies*

The Prison Litigation Reform Act (PLRA) provides, in part, "[n]o action shall be brought with respect to prison conditions

---

[3] In Count III of the complaint, plaintiff states "Article IV(e) encompasses this entire lawsuit, with several issues deriving from that one portion of the article." The court construes this to refer to Article IV(e) of the ICC which provides: "All inmates who may be confined in an institution pursuant to the provisions of this compact shall be treated in a reasonable and humane manner and shall be treated equally with such similar inmates of the receiving state as may be confined in the same institution. The fact of confinement in a receiving state shall not deprive any inmate so confined of any legal rights which said inmate should have had if confined in an appropriate institution of the sending state." (Doc. 1, p. 7, and Attach. D.)

under section 1983 or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This provision "requires proper exhaustion" of the administrative remedies available to a prisoner. *Woodford v. Ngo*, 548 U.S. 81, 92 (2006).

To satisfy the administrative procedures at the LDC, a prisoner first must submit an informal grievance within seven days of the incident giving rise to the complaint. If, following the receipt of a response, the prisoner remains dissatisfied, the prisoner has five calendar days to submit a formal grievance.

Defendant asserts plaintiff failed to timely commence the grievance procedure and that he presented only the claim of discrimination in his grievance.

Plaintiff responds, however, that he filed an informal grievance shortly after the Maryland inmates were placed in segregation and, "[a]fter receiving his response from his informal grievance (that ended up getting lost) he filed a formal grievance." (Doc. 36, p. 8.)

A copy of the grievance is attached to the complaint (Doc.

15

1, Ex. B.),[4] but it sheds little light on the timeliness of the grievance. First, the sole grievance page included in the record is identified as Page 2 of 2, and it does not reflect the date the informal grievance was submitted. Moreover, there is information in the record that suggests the grievance system was not entirely reliable during the period in question. In correspondence to another Maryland inmate, defendant Richardson wrote:

> There has been some difficulty in getting all grievances answered in a timely manner. Prior to November 2009 there was no tracking system for informal grievances, and numerous informal grievances were lost. We are in the process of analyzing the grievance procedures to improve the timeliness of responses. (Doc. 37, Ex. 2A, letter dated January 26, 2010.)

Thus, the record concerning the timeliness of plaintiff's exhaustion of remedies is inconclusive.

However, after examining the grievance materials in the record, the court is persuaded that plaintiff failed to identify in those materials many of the claims he now asserts. It is incumbent on a prisoner to present sufficient notice in a grievance to allow authorities to address the claims. *See,*

---

[4] The counselor's response is dated December 3, 2008, and the Warden's response is dated December 9, 2008. The grievance primarily alleges discrimination, citing assaultive behavior by other inmates that did not result in a broad segregation.

*e.g., Kikumura v. Osagie*, 451 F.3d 1269, 1282-85 (10th Cir. 2006)("a grievance satisfies §1997e(a)'s exhaustion requirement [only] so long as it provides prison officials with enough information to investigate and address the inmate's complaint internally.") Because plaintiff's grievance does not address such claims as the lack of credit for double-celling, the use of tele-conferencing for his Maryland parole hearing, the limitations on property allowed in segregation, noncontact visitation, and the use of restraints for transfer of segregated inmates, he has not satisfied the exhaustion requirement, and these unexhausted claims are subject to dismissal.

**Motions of plaintiff for appointment of counsel**

Plaintiff filed a combined motion for an extension of time and for the appointment of counsel (Doc. 34) and two other motions requesting counsel (Docs. 38 and 41).

A party in a civil action does not have a constitutional right to counsel. *See Carper v. Deland,* 54 F.3d 613, 616 (10th Cir. 1995); *Bee v. Utah State Prison,* 823 F.2d 397, 399 (10th Cir.1987). Rather, the decision to appoint counsel for an indigent party lies in the discretion of the district court. *Williams v. Meese*, 926 F.2d 994, 996 (10th Cir. 1991). A district court may, in its discretion, request counsel for an indigent inmate under 28 U.S.C. § 1915(e)(1). *Carper,* 54 F.3d at

17

617.

In deciding whether to appoint counsel in a civil action, the district court should consider "the merits of a [litigant's] claims, the nature and complexity of the factual issues, and the [litigant's] ability to investigate the facts and present his claims." *Hill v. Smithkline Beecham Corp.,* 393 F.3d 1111, 1115 (10th Cir. 2004)(citations omitted). "The burden is on the applicant to convince the court that there is sufficient merit to his claim to warrant the appointment of counsel." *Hill,* 393 F.3d at 1115 (citation omitted).

The court has carefully considered the record and finds the plaintiff is capable of presenting his claims for relief and the relevant facts supporting the claims. He is able to gather relevant materials and to articulate the nature and basis of his claims. His pleadings include legal references and argument. Likewise, the legal and factual issues in this action do not appear to be particularly complex. Accordingly, the court declines to appoint counsel in this matter.

Finally, plaintiff's request for an extension of time to file a response, incorporated in Doc. 34, is denied as moot, as plaintiff filed the pleading for which the extension was requested.

**Plaintiff's motions for summary judgment**

Two motions for summary judgment filed by the plaintiff are pending before the court. First, he filed a motion captioned as a response to the motion to dismiss of defendant Stouffer, or, alternatively, as a motion for summary judgment (Doc. 35). Because the court dismissed defendant Stouffer from this action in an earlier order based upon a lack of personal jurisdiction over the defendant (Doc. 39), the court denies plaintiff's motion for summary judgment.

Next, plaintiff filed a motion captioned as a response to the motion of defendants Richardson and Martin, or, alternatively, a motion for summary judgment (Doc. 37). The court has considered that pleading as a response to the motion of defendants Richardson and Martin, and here notes only that it finds no basis to grant summary judgment, which is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

### Conclusion

For the reasons set forth, the court concludes this matter should be dismissed and all relief denied. Plaintiff failed to exhaust administrative remedies concerning a number of his claims, and his claims arising from the fact of his administrative segregation fail to state a claim for relief.

IT IS, THEREFORE, BY THE COURT ORDERED the motion of defendant Stermer to dismiss, or, in the alternative, for summary judgment (Doc. 28) and the motion of plaintiff to dismiss defendants Stermer and Martin (Doc. 33) are granted.

IT IS FURTHER ORDERED the motion to dismiss filed by defendants Martin and Richardson (Doc. 30) is granted.

IT IS FURTHER ORDERED plaintiff's motion for an extension of time and for the appointment of counsel (Doc. 34), his motion for the appointment of counsel (Doc. 38), and his combined motion for the appointment of counsel and to expedite (Doc. 41) are denied.

IT IS FURTHER ORDERED plaintiff's motion for summary judgment against defendant Stouffer (Doc. 35) and his motion for summary judgment against defendants Richardson and Martin (Doc. 37) are denied.

Copies of this order shall be transmitted to the parties.

**IT IS SO ORDERED.**

Dated at Topeka, Kansas, this 30th day of August, 2011.

S/ Sam A. Crow
SAM A. CROW
United States Senior District Judge